# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DATWAN LUM, | § | |
| | § | No. 462, 2016 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | ID. Nos. 1408022140; |
| STATE OF DELAWARE, | § | 1408022157A; and |
| | § | 1408022157B |
| Plaintiff Below, | § | |
| Appellee. | § | |
| | § | |
| | § | |

Submitted: April 12, 2017
Decided: May 16, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## ORDER

This 16th day of May 2017, the parties' briefs and the record of the case having been considered, it appears that:

1. Appellant, Datwan Lum, appeals from a Superior Court jury verdict finding him guilty of Second Degree Burglary, two counts of Theft from a Senior, Second Degree Conspiracy, Receiving Stolen Property over $1,500, and Criminal Mischief less than $1,000. Lum makes two claims on appeal. He contends that: 1) the trial court committed reversible error by giving a jury instruction which informed the jurors they could infer from Lum's possession of recently stolen goods that he was

guilty of burglary and theft under certain circumstances detailed in the instruction and 2) the instruction given was constitutionally defective because it did not inform the jury that Lum did not have a duty to present affirmative evidence to rebut the inference.

2. Raymond Seigfried left his home at 2210 Hillside Road in Arden Delaware at approximately 12:10 p.m. on August 24, 2015 to attend a work event. Seigfried returned home around 2:30 p.m., and noticed that his door was not locked. As he entered his home, the phone rang. Seigfried answered the phone, and an unknown caller said "I think I have your briefcase."[1]

3. He then went upstairs and discovered that he had been robbed. His computer room and three bedrooms were in disarray. He discovered that his personal briefcase and laptop, his work briefcase and laptop, a video recorder, a projector, his wife's oxycodone medication, and some other items were missing. He estimated the approximate value of the stolen items at $2,000.

4. Seigfried called 911, and Master Corporal Steinberg of the New Castle County Police Department responded to the call at about 2:30 p.m. Master Corporal Steinberg and K-9 officer Corporal Mouser conducted a perimeter check of the house and discovered a damaged screen and a kicked in basement window.

---

[1] App. to Appellant's Opening Br. at 84.

2

5. Master Corporal Steinberg determined that the call Seigfried received about his missing briefcase came from the Northeast Market, a convenience store on Northeast Boulevard in Wilmington. The officer then went to the store and an employee gave him Seigfried's briefcase. The store manager also provided the officer with the store's surveillance video, which showed a Honda sedan pulling into the store's parking lot at 1:27 p.m. The video showed a male, wearing a white tank top and glasses, exiting the passenger side of the vehicle holding what appeared to be a briefcase, and then putting the briefcase into the store's dumpster. The video also showed the driver, in a white t-shirt and khaki shorts, exit the car with what appeared to be an iPad. The driver entered the store and handed the iPad to the store clerk, who handed it right back to the driver. The driver then walked out the store and got back into his car.

6. The police proceeded to run the make and model of the vehicle through the state's database, and in conjunction with the video surveillance, identified Markevous Tymes as the driver. The vehicle was registered to Tymes' girlfriend, Chandelier Hagler, who lived in Wilmington. The police conducted surveillance of Hagler's residence and succeeded in taking Tymes into custody while he was in the Honda. The Honda was silver in color and the police noticed that the Honda had damage to the rear bumper. The police found Lum at Hagler's residence wearing

3

the same clothes that he was wearing the day of the burglary. They took him into custody after a brief foot pursuit.

7. On November 2, 2014, the police contacted Helen Ohlson, who had been riding her bike near Seigfried's home at the time of the burglary. She told police that between 1:00 and 2:00 p.m. on that day she saw two speeding cars about an eighth of a mile from Hillside Drive. She stated that the first car was a silver sedan with some "messed-up paint" and some "trim hanging off."[2] Ohlson saw two black males in the car in their twenties or thirties, possibly wearing white t-shirts. Ohlson described the second car as a newer looking bright blue sedan. She testified that the second car, which seemed to be following the silver sedan, was driven by a black woman.

8. At trial, Lum moved for judgement of acquittal on all counts except the Receiving Stolen Property charge. He argued that the evidence was insufficient "to show that he actually went into the house committing a burglary and a theft and certainly that he never conspired to do that burglary and theft."[3] The motion was denied.

9. Lum was jointly tried with his co-defendant, Tymes. At the prayer conference, the State requested an instruction informing the jury that if it found Lum

---

[2] *Id.* at 87.
[3] *Id.* at 139.

4

to be in possession of recently stolen property, it could infer from such possession that he was guilty of burglary and theft under certain circumstances explained in the instruction. The State argued that such an instruction, sometimes referred to as a permissible inference instruction, had been approved in *Hall v. State*[4] and was supported by the evidence in this case. Both defendants opposed the instruction. Lum argued that the evidence that he had committed burglary was weak and giving the jury the instruction would relieve the State of its burden of proof as to that charge. The trial judge ruled that *Hall*[5] applied and the instruction was given.

10. This Court reviews a trial judge's decision to give a jury instruction over the defendant's objection *de novo*.[6] The Court also considers whether the instructions, considered as a whole, correctly stated the law.[7]

11. Lum argues that it was error to give the instruction because the evidence that he had committed burglary was weak; there was no evidence that he had possessed recently stolen property; and there was no identification of Lum as the person in the surveillance video at the convenience store. The State counters that the surveillance video shows Lum throwing what turned out to be Seigfried's briefcase into a dumpster about an hour after the burglary; that when the police

---

[4] 473 A.2d 352, 355 (Del. 1984).
[5] *Id.*
[6] *Robertson v. State*, 41 A.3d 406, 408 (Del. 2012).
[7] *Claudio v. State*, 585 A.2d 1278, 1282 (Del. 1991).

5

arrested Lum three days later, he was wearing the same clothes he was wearing in the video footage the day of the burglary; and that a car matching the description seen on the surveillance video with two males was seen in the area of the burglary at the time it occurred.

12. We are satisfied that there was sufficient evidence to support a jury conclusion that Lum was in possession of recently stolen property, specifically the briefcase which was put in the dumpster. Accordingly, we find that the instruction given was supported by the evidence, and there was no error in the Superior Court's decision to give it.

13. Lum also contends that the instruction was constitutionally defective because it did not inform the jury that Lum did not have a duty to present affirmative evidence to rebut the inference. This same argument was made by Tymes in his appeal. We analyzed and rejected Tymes' argument there.[8] We incorporate by reference the analysis of this issue in Tymes' case and reject Lum's argument here.

THEREFORE, IT IS THE ORDER of the Court that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

_James T. Vaughn_
Justice

---

[8] *Tymes v. State*, 2017 WL 915110 (Del. Mar. 7, 2017).

6